# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| Craig B. Rosen, | : | |
|       Debtor. | : | Bankruptcy No. 15-10435-MDC |
| | | |
| Terry P. Dershaw, as Chapter 7 Trustee of the Estate of Craig B. Rosen, | : | |
|       Plaintiff, | : | |
| v. | : | Adversary No. 15-00526-MDC ✓ |
| Craig B. Rosen and Deborah Rosen, | : | |
|       Defendants. | : | |
| | | |
| Terry P. Dershaw, Trustee, | : | |
|       Plaintiff, | : | |
| v. | : | Adversary No. 16-00199-MDC |
| Brett Weinerman, *et al.*, | : | |
|       Defendants. | : | |

# **MEMORANDUM**

BY: MAGDELINE D. COLEMAN, UNITED STATES BANKRUPTCY JUDGE

Before this Court for consideration is the Chapter 7 Trustee, Terry P. Dershaw's (the "Trustee") *Motion for Judgment* (the "Motion").[1] The Motion seeks judgment against the debtor, Craig B. Rosen (the "Debtor") and his wife, Deborah Rosen ("Mrs. Rosen," and together with the Debtor, the "Rosens"), for breach of their obligations under an approved Settlement Agreement and Release (the "Settlement Agreement"). The Trustee seeks (i) judgment against the Rosens, jointly and severally, in the amount of $150,000, plus attorney's fees, and (ii) judgment against the Debtor individually in the amount of $450,000, plus attorney's fees. For the reasons discussed below, the Court will grant the Motion.

---

[1] Adv. Pro. 15-00526, Docket No. 77.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

   A.  <u>The Settlement</u>

After his appointment, the Trustee initiated adversary proceedings against a number of defendants (collectively, the "Adversary Proceedings"), including the Rosens, Weinerman Pain and Wellness ("WPW"), Brett Weinerman ("Dr. Weinerman"), and the four adult children of the Rosens, Lauren Berman ("Lauren"), Blair Rosen ("Blair"), Blake Rosen ("Blake"), and Jeffrey Rosen ("Jeffrey") (collectively, the "Rosen Children," and together with the Rosens, WPW and Dr. Weinerman, the "Defendants"). The Trustee asserted various claims in the Adversary Proceedings, including for the avoidance and recovery of alleged fraudulent transfers to each of the Defendants.

On February 22, 2017, the Trustee filed the *Motion of Chapter 7 Trustee for an Order Approving Settlement Agreement and Release Pursuant to Fed. R. Bankr. P. 9019 and for Dismissal of Pending Adversary Proceeding Pursuant to Federal Rule 7041* (the "Settlement Motion"),[2] by which the Trustee sought approval of the Settlement Agreement between the Trustee, the Defendants and the Estate of Jeffrey Rosen ("Jeffrey's Estate") resolving the Adversary Proceedings.[3] On March 22, 2017, the Court entered an Order granting the Settlement Motion and approving the Settlement Agreement.[4]

The approved Settlement Agreement has a number of provisions relevant to the disposition of the Motion. The Settlement Agreement required the Debtor to "cause to be paid" to the Trustee $900,000, defined as the "Settlement Amount," in two stages. First, $400,000, defined as the "Initial Payment" in the Settlement Agreement, was due and payable on "the later of (a) the satisfaction of the Conditions, and (b) April 15, 2017."[5] Settlement Agreement at ¶3(a). The date on which the Initial Payment was due was defined under the Settlement Agreement as the Effective Date, and as will be discussed below, this date is critical to the disposition of the Motion. Second, the balance of $500,000, defined as the "Balance" in the

---

[2] Bankr. Docket No. 292.

[3] The Settlement Agreement is attached to the Settlement Motion as Exhibit A. Bankr. Docket No. 292-1.

[4] Bankr. Docket No. 296.

[5] The term "Conditions" is defined in the Settlement Agreement to mean the entry of a final, non-appealable order approving the Settlement Agreement and the dismissal of Adversary Proceeding 15-00327. Settlement Agreement at ¶2.

2

Settlement Agreement, was payable in equal monthly installments of $25,000, commencing 30 days after the Effective Date, and continuing until paid in full. Settlement Agreement at ¶3(b).

After setting out the schedule for satisfaction of the Settlement Amount, the Settlement Agreement detailed the liability of the Rosens for the Balance: the Rosens were to be jointly and severally liable for payment of the Balance, but Mrs. Rosen's liability would be deemed satisfied "after payment of Three Hundred Fifty Thousand Dollars ($350,000.00) on account of said Balance." Settlement Agreement at ¶4. The Rosens were the only Defendants obligated under the Settlement Agreement for payment of the Balance, as the agreement expressly provides that WPW, Dr. Weinerman, the Rosen Children and Jeffrey's Estate were not obligated for the Balance or any portion thereof. Settlement Agreement at ¶5.

Upon payment of the Settlement Amount by the Rosens, the Settlement Agreement provides for a broad release of the Trustee's claims against the Rosens, the Rosen Children and Jeffrey's Estate (the "Release"). Settlement Agreement at ¶7. However, despite the fact that no party other than the Rosens were responsible for the Balance, the Settlement Agreement provided an option for Lauren and Blair together, or alternatively, Lauren individually, to contribute to the Settlement Amount in exchange for a reduction of the Balance their parents would be responsible for paying and an acceleration of the timing of the Release granted to Lauren, Blair, Jeffrey and Jeffrey's Estate. First, Lauren and Blair could contribute, collectively, $50,000 towards the Settlement Amount (the "Collective Supplemental Payment"). Settlement Agreement at ¶8. If the Collective Supplemental Payment was made, the Release granted to Lauren, Blair, Jeffrey and Jeffrey's Estate would become effective on the date the payment was made, rather than when the entire Balance was paid off, and the Balance would be correspondingly reduced to $450,000. Settlement Agreement at ¶8. Alternatively, Lauren could contribute, individually, $44,000 towards the Settlement Amount (the "Lauren-Only Supplemental Payment," and together with the Collective Supplemental Payment, the "Supplemental Payment"). Settlement Agreement at ¶9. If the Lauren-Only Supplemental Payment was made, the Release granted to Lauren would become effective on the date the payment was made, and the Balance would be correspondingly reduced to $456,000.

3

Settlement Agreement at ¶9. Of central importance to the disposition of the Motion, the Settlement Agreement provided that with respect to both the Collective Supplemental Payment and the Lauren-Only Supplemental Payment, the payment was due on or before the Effective Date.

The Settlement Agreement also addresses the Trustee's remedies in the event the Rosens defaulted on their obligation to pay the Balance. In such event, after the passage of a ten-day cure period, the Trustee could both (a) seek to enter judgment against the Rosens in Adversary Proceeding 15-00526 in an amount equal to the unpaid portion of the Balance, multiplied by three, plus reasonable attorneys' fees and costs of collection, defined as the "Punitive Amount," and (b) resurrect Adversary Proceeding No. 16-00199 against the Rosen Children, unless the Collective Supplemental Payment was made by the Effective Date, in which case the Trustee could proceed only against Blake. Settlement Agreement at ¶11.

### B.    The Motion and Hearing

On June 25, 2018, the Trustee filed the Motion, seeking a judgment against the Rosens as a result of their alleged breach of the Settlement Agreement.[6] The Trustee alleged that the Debtor paid only 12 of the 20 required monthly payments, representing only $300,000 of the $500,000 balance due under the parties' Settlement Agreement.[7] The Trustee further alleged that as a result of the Debtor's failure to make the required payments under the terms of the Settlement Agreement, the Rosens were jointly and severally liable for $150,000 and the Debtor, individually, was liable for $450,000.

On July 9, 2018, the Rosens filed a response and objection (the "Objection")[8] to the Motion. In their Objection, the Rosens did not contest that they are jointly and severally liable for payment of the Balance, with Mrs. Rosen's liability deemed satisfied after payment of $350,000. Objection at ¶9. Nor did they contest that the Debtor only made payments on the Balance totaling $300,000. Objection at ¶10. What the Rosens did contest, however, is the Trustee's position that Mrs. Rosen remains liable for

---

[6] Adv. Pro 15-00526, Docket No. 77. ¶¶2-3.

[7] Motion, Paragraph 3.

[8] Adv. Pro 15-00526, Docket No. 79.

4

$50,000. The Rosens argued that because "the Trustee has either received or has agreed to accept the sum of $50,000 from Blair and [Lauren], in exchange for their release from further liability," that sum constitutes the Supplemental Payment contemplated under paragraph 8 of the Settlement Agreement. Objection at ¶20. The Rosens contended that a total of $350,000 of the Balance has therefore been paid, rather than just $300,000 as asserted by the Trustee, and Mrs. Rosen's liability should be deemed satisfied pursuant to paragraph 4 of the Settlement Agreement. Objection at ¶21.

A hearing on the Motion and Objection was held on August 15, 2018 (the "Hearing"). At the Hearing, the Trustee argued that the Rosens were in default of the Settlement Agreement and the $50,000 payments from Lauren and Blair did not constitute the Supplemental Payment provided for under the terms thereof. Rather, those payments were the product of settlements the Trustee reached in June 2018 with Lauren and Blair in Adversary Proceeding 16-00199.[9] Pursuant to the Trustee's settlement with Lauren, Lauren agreed to pay the Trustee $44,000 in exchange for a release of any claims the Debtor's estate had against Lauren (the "Lauren Settlement"). Likewise, pursuant to the Trustee's settlement with Blair, Blair agreed to pay the Trustee $6,000 in exchange for a release of any claims the Debtor's estate had against Blair (the "Blair Settlement," and together with the Lauren Settlement, the "New Settlement Agreements").[10]

The Rosens conceded that the Supplemental Payment had not been paid by the Effective Date as required by the Settlement Agreement. However, they believed that under the terms of the New Settlement Agreements, the $50,000 payment constituted the Supplemental Payment provided for under the Settlement Agreement. The Rosens further argued that it was inequitable for the Trustee to collect the

---

[9] In that adversary proceeding, the Trustee sought the avoidance and recovery of alleged fraudulent transfers from the Debtor to the Rosen Children. Pursuant to the terms of the Settlement Agreement, in the event of a default in any of the payments set forth therein, the Trustee could pursue the adversary action "as to the Rosen Children unless the Supplemental Payment was made by the Effective Date, in which case [Lauren], Blair, Jeffrey and the Estate are released, and the Trustee can proceed only as to Blake." Settlement Agreement at ¶11. The Trustee entered into the New Settlement Agreements with Lauren and Blair without formally seeking to re-open the adversary action against them.

[10] Although the Trustee settled with Lauren and Blair, he moved to reopen the adversary action against Blake on June 25, 2018, one day prior to filing the Motion for Judgment against the Rosens. Adv. Pro. 16-00199, Docket No. 140. The Trustee and Blake ultimately settled the Trustee's claims against Blake, which settlement was approved by this Court on October 31, 2018. Adv. Pro. 16-00199, Docket No. 156.

5

$50,000 payment from Lauren and Blair and not provide Mrs. Rosen with credit for those payments. The Rosens also argued that it was not clear whether the Trustee had received additional sums from WPW in excess of the Initial Payment made by WPW as of the Effective Date.[11]

At the close of the Hearing, the Court agreed to keep the trial record open to allow the Trustee to submit the New Settlement Agreements into evidence as they had not yet been filed of record with the Court and the Rosens to submit evidence of any WPW payment in excess of the Initial Payment. The Trustee's additional evidence was required to be submitted to the Court by August 22, 2018, and the Rosens' by August 29, 2018.

The Trustee submitted the New Agreements on August 15, 2018, shortly after the end of the Hearing.[12] Among their terms, the New Settlement Agreements each provide that "Except as specifically provided herein, the Parties hereto acknowledge and agree that the rights and interests of the Parties under this Agreement are intended to benefit solely the Parties to this Agreement." Lauren Settlement Agreement at ¶15; Blair Settlement Agreement at ¶15. The Rosens did not submit evidence of any additional payments from WPW, but by letter dated August 29, 2018, advised the Court that they had not received any information from WPW and would be issuing a subpoena for its bank records. On September 20, 2018, the Trustee filed an affidavit listing all of the payments made by WPW and the Debtor together with copies of the checks and electronic credits representing the various payments. As of the date of this decision, the Rosens had not submitted any evidence of additional payments to the Trustee by WPW. The Court, therefore, concludes that only $700,000 of the Settlement Amount has been paid to the Trustee, including $300,000 by the Rosens.

## II.   DISCUSSION

Resolution of the Motion and Objection turns on interpretation of the Settlement Agreement. Settlement agreements are contracts, and basic contract principles apply to their interpretation. *Palmer v.*

---

[11] The Initial Payment was made by WPW on April 14, 2017. Bankr. Docket No. 318.
[12] Adv. Pro. No. 16-00199 Docket No. 149.

6

*Enhanced Recovery Co. LLC*, 2017 U.S. Dist LEXIS 18338, at *10 (E.D. Pa. Feb 9, 2017) (*citing Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262, 269 (3d Cir. 2002)). The parties' Settlement Agreement provides that it will be interpreted and construed in accordance with Pennsylvania law. Settlement Agreement at ¶17. Under Pennsylvania contract law, "'courts should focus on the clear and unambiguous language of an agreement as manifestly expressed, rather than as, perhaps, silently intended.'" *Palmer*, 2017 U.S. Dist LEXIS 18338, at *10 (*quoting Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 275 (3d Cir. 2016)).

Here, the language of the Settlement Agreement is clear and unambiguous. It provides that the Balance to be paid by the Rosens would be reduced if either the Collective Supplemental Payment or the Lauren-Only Supplemental Payment was made. If the Collective Supplemental Payment was made, the Trustee would release any estate claims against Lauren, Blair, Jeffrey or Jeffrey's Estate. Alternatively, if the Lauren-Only Supplemental Payment was made, the Trustee would release any estate claims solely against Lauren. Payment of the Collective Supplemental Payment or the Lauren-Only Supplemental Payment would also benefit the Rosens by correspondingly reducing the Balance, and thus their liability. The Settlement Agreement is clear and unambiguous, however, that Blair and/or Lauren had to pay the Supplemental Payment on or before the Effective Date. Settlement Agreement at ¶8. That is, in order for a payment from Blair and/or Lauren to effect any reduction of the amount of the Rosens' liability, it had to be made by the Effective Date. It was not, and the Rosens do not argue that it was. As such, Lauren and Blair did not contribute to the Settlement Amount, did not reduce their parents' liability under the Settlement Agreement, and any payment the Trustee receives or received from them after the Effective Date does not constitute the Supplemental Payment under the clear and unambiguous terms of the Settlement Agreement.

While the clear and unambiguous terms of the Settlement Agreement alone defeat the argument of the Rosens, so too does the fact that their daughters entered into the subsequent settlements with the Trustee. Lauren and Blair decided to enter into *new* settlement agreements with the Trustee in June 2018 after the Rosens defaulted on their obligation to pay the Balance. The New Settlement Agreements each

7

provide for payment of settlement amounts by Lauren and Blair in exchange for releases. The $44,000 settlement payment under the Lauren Settlement Agreement is in exchange for a release of any claims the Trustee has against Lauren. Similarly, the $6,000 payment under the Blair Settlement Agreement is in exchange for a release of any claims the Trustee has against Blair. These New Settlement Agreements therefore provide for settlement payments and releases that are distinct from those under the Settlement Agreement, which would have been unnecessary if Lauren and Blair could have still made the Supplemental Payment under the Settlement Agreement and obtained the corresponding Release. Furthermore, the New Settlement Agreements with Lauren and Blair each provide that there are no intended third party beneficiaries of their subsequent settlement with the Trustee.

The payments the Trustee has or will receive under the New Settlement Agreements he reached with Lauren and Blair, after their opportunity to contribute to the Settlement Amount had expired, will not be treated as though they had been made pursuant to and in accordance with the terms of the Settlement Agreement. Such a result would run counter to the clear and unambiguous terms of the Settlement Agreement, which required that any contribution by Blair and/or Lauren be made by the Effective Date. It would also run counter to the Settlement Agreement's provision that its terms could not be waived, modified or amended except in writing signed by the party against whom enforcement of such waiver, modification or amendment is sought, and no modification would be binding or enforceable unless in writing by all parties and approved by this Court. Settlement Agreement at ¶20. The Rosens have not established that the Trustee's New Settlement Agreements with Lauren and Blair constitute any such waiver, modification or amendment of the Settlement Agreement's clear and unambiguous requirement that the Supplemental Payment was to be paid on or before the Effective Date.

Finally, the Court finds no merit to the Rosens' argument that this Court, exercising its equitable powers, should find that the payments the Trustee received pursuant to the New Settlement Agreements should be credited against the Balance for which the Rosens remain liable. This Court cannot rewrite the parties' bargain based on its own notions of fairness and equity. *See, e.g., Hiser v. Neumann Med. Ctr., Inc.*, 117 B.R. 125, 133 (Bankr. E.D. Pa. 1990) (rejecting litigant's position, "despite the equities,"

8

because it was not supported by the terms of the agreement at issue); *Northeast Indus. Dev. Corp. v. Parkstone Capital Partners, LLC (In re Northeast Indus. Dev. Corp.)*, 513 B.R. 825, 845 (Bankr. S.D.N.Y. 2014) (*citing Cruden v. Bank of N.Y.*, 957 F.2d 961, 976 (2d Cir. 1992) ("A court may neither rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous … nor redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case.")).

### III. CONCLUSION

For the reasons stated above, the Court will grant the Motion, and overrule the Objection. An Order consistent with this Memorandum will be entered.

Dated: March 15, 2019

_____
MAGDELINE D. COLEMAN
UNITED STATES BANKRUPTCY JUDGE

Mark R. Cuker, Esquire
Christopher Markos, Esquire
Sarah T. Hansel, Esquire
Williams Cuker Berezofsky
1515 Market Street, Suite 1300
Philadelphia, PA 19102

Edward J. DiDonato, Esquire
Fox Rothschild LLP
2000 Market Street, 10th Floor
Philadelphia, PA 19103

Harry J. Giacometti, Esquire
Damien N. Tancredi, Esquire
Flaster/Greenberg, PC
1835 Market Street, Suite 1050
Philadelphia, PA 19103

Michael D. Vagnoni, Esquire
Obermayer Rebmann Maxwell & Hippel, LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102

Michael P. Donohue, Esquire
David B. Smith, Esquire
Robert M. Greenbaum, Esquire
Smith Kane, LLC
112 Moores Road, Suite 300
Malvern, PA 19355

Scott F. Waterman, Esquire
110 West Front Street
Media, PA 19063

Aaron S. Applebaum, Esquire
Saul Ewing Arnstein & Lehr LLP
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102

Gary F. Seitz, Esquire
Holly E. Smith, Esquire
Gellert Scali Busenkell & Brown LLC
8 Penn Center
1628 John F. Kennedy Boulevard, Suite 1901
Philadelphia, PA 19103

Michael G. Busenkell, Esquire
Shannon D. Humiston, Esquire
Gellert Scali Busenkell & Brown LLC
1201 N. Orange Street, Suite 300
Wilmington, DE 19801